UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MENG-LIN LIU,<br><br>       **Plaintiff,**<br><br> - against -<br><br>SIEMENS AG,<br><br>       **Defendant.** | 13-CV-0317 (WHP)<br><br>ECF CASE<br><br>ORAL ARGUMENT REQUESTED |

**MEMORANDUM OF LAW IN SUPPORT OF
SIEMENS AG'S MOTION TO DISMISS**

Brant W. Bishop, P.C.
Ragan Naresh (*pro hac vice*)
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Suite 1200
Washington, D.C. 20005
Tel.: (202) 879-5000
brant.bishop@kirkland.com
ragan.naresh@kirkland.com

*Counsel for Siemens AG*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................................1

BACKGROUND ...................................................................................................................2

I.       Factual Background ...................................................................................................2

II.      Statutory Background ................................................................................................3

ARGUMENT .........................................................................................................................4

I.       The Anti-Retaliation Provision Does Not Reach The Extraterritorial Conduct Alleged In The Amended Complaint. ........................................................................5

II.      The Amended Complaint Fails To Allege That Mr. Liu Engaged In Protected Activity. ....................................................................................................................11

CONCLUSION ...................................................................................................................14

## **TABLE OF AUTHORITIES**

**Page(s)**

### **CASES**

*Allen v. Admin. Review Bd.*,
   514 F.3d 468 (5th Cir. 2008) ............................................................................................... 13

*Asadi v. G.E. Energy (USA), LLC*,
   No. 4:12-345, 2012 WL 2522599 (S.D. Tex. June 28, 2012) ........................................... *passim*

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................................ 4

*Carnero v. Boston Sci. Corp.*,
   433 F.3d 1 (1st Cir. 2006) ................................................................................................... 2

*Day v. Staples, Inc.*,
   555 F.3d 42 (1st Cir. 2009) ................................................................................................ 13

*EEOC v. Arabian Am. Oil Co.*,
   499 U.S. 244 (1991) .................................................................................................... 6, 7, 9

*Egan v. TradingScreen, Inc.*,
   No. 10 Civ. 8202 (LBS), 2011 WL 1672066,
   (S.D.N.Y. May 4, 2011) ............................................................................................ 1, 11, 14

*In re Gupta*, Case No. 2010-SOX-54,
   2011 WL 121916, (Dep't of Labor Jan. 7, 2011) ................................................................ 13

*In re Royal Bank of Scotland Group*,
   765 F. Supp. 2d 327 (S.D.N.Y. 2011) ................................................................................ 10

*In re Villanueva*,
   ARB Case No. 09-108, ALJ Case No. 2009-SOX-006,
   2011 WL 6981989 (Dec. 22, 2011) (en banc) .................................................................... 12

*Jacobs v. Felix Bloch Erben Verlag*,
   160 F. Supp. 2d 722 (S.D.N.Y. 2001) .................................................................................. 5

*Kiobel v. Royal Dutch Petroleum Co.*,
   133 S. Ct. 1659 (2013) ................................................................................................ 1, 5, 6

*Linzer Prods. Corp. v. Sekar*,
   499 F. Supp. 2d 540 (S.D.N.Y. 2007) .................................................................................. 4

*Morrison v. Nat'l Australia Bank Ltd.*,
   130 S.Ct. 2869 (2010) ................................................................................................ *passim*

*Nollner v. S. Baptist Convention, Inc.*,
  852 F. Supp. 2d 986 (M.D. Tenn. 2012) ............................................................................ 2, 11

*Norex Petroleum Ltd. v. Access Industries, Inc.*,
  631 F.3d 29 (2d Cir. 2010) ................................................................................... 6, 8, 9, 10

*Ruffolo v. Oppenheimer & Co.*,
  987 F.2d 129 (2d Cir. 1993) ..................................................................................................... 5

*Russello v. United States*,
  464 U.S. 16 (1983) ...................................................................................................................... 8

*Snam Progetti S.P.A. v. Lauro Lines*,
  387 F. Supp. 322 (S.D.N.Y. 1974) .......................................................................................... 5

*Wallace v. Conroy*,
  945 F. Supp. 628 (S.D.N.Y. 1996) .......................................................................................... 5

## **STATUTES**

Dodd-Frank Act, 15 U.S.C. § 78u-6(h)(1)(A) ......................................................... *passim*

## **RULES**

Fed. R. Civ. P. 12(b)(6) .................................................................................................................. 4

INTRODUCTION

Plaintiff Meng-Lin Liu alleges that Siemens AG retaliated against him in violation of the Anti-Retaliation Provision of the Dodd-Frank Act.  *See* 15 U.S.C. § 78u-6(h)(1)(A).  Mr. Liu's amended complaint should be dismissed with prejudice for two independent reasons:  The Anti-Retaliation Provision does not apply extraterritorially, and its provisions are not implicated by the conduct he has alleged.

*First*, the Anti-Retaliation Provision does not apply to the wholly foreign conduct between foreign persons alleged in the amended complaint.  The Supreme Court has made clear that federal statutes do not apply outside the United States unless Congress has clearly indicated otherwise.  *E.g.*, *Kiobel v. Royal Dutch Petroleum Co.*, 133 S. Ct. 1659, 1664 (2013); *Morrison v. Nat'l Australia Bank Ltd.*, 130 S.Ct. 2869, 2877 (2010).  The Court's reasoning leaves no doubt that the Anti-Retaliation Provision of the Dodd-Frank Act reaches only domestic activity.  Indeed, the only court that has addressed this issue squarely held that the provision does not apply to the kind of extraterritorial conduct alleged here.  *See Asadi v. G.E. Energy (USA), LLC*, No. 4:12-345, 2012 WL 2522599, at *4 (S.D. Tex. June 28, 2012).  The amended complaint's central allegation is that a German company should be held liable because a Chinese company allegedly retaliated against its Taiwanese employee after he expressed concern that various transactions with entities in North Korea, China, and Hong Kong might have violated the Foreign Corrupt Practices Act.  *See, e.g.*, Am. Compl. ¶¶ 1, 10, 15.  The Anti-Retaliation Provision simply does not extend to this entirely foreign dispute.

*Second*, Mr. Liu has failed to identify any law that "required or protected" his alleged internal disclosures about possible FCPA violations, as the Anti-Retaliation Provision requires.  *See* 15 U.S.C. § 78u-6(h)(1)(A); *Egan v. TradingScreen, Inc.*, No. 10 Civ. 8202 (LBS), 2011 WL 1672066, at *6 (S.D.N.Y. May 4, 2011).  He has pointed to the FCPA itself, but that law contains

1

no protection for whistleblowers. *See Nollner v. S. Baptist Convention, Inc.*, 852 F. Supp. 2d 986, 998 (M.D. Tenn. 2012). Mr. Liu has also cited Section 806 of the Sarbanes-Oxley Act, but it does not protect foreign employees working for foreign companies. *See Carnero v. Boston Sci. Corp.*, 433 F.3d 1, 7–9 (1st Cir. 2006). Unable to identify any other law that required or protected his alleged disclosures, Mr. Liu cannot satisfy one of the fundamental requirements of the Anti-Retaliation Provision.

For either or both of these reasons, the amended complaint should be dismissed.

## BACKGROUND

### I.    Factual Background

Defendant Siemens AG is a German corporation and the parent company of Siemens China Ltd. Am. Compl. ¶¶ 2, 10. In March 2008, Siemens China hired Plaintiff Meng-Lin Liu, a resident of Taiwan, as a compliance officer in its healthcare division. *Id.* ¶¶ 1, 10. This part of the Siemens business develops and sells medical equipment, such as Magnetic Resonance Imaging (MRI) and Computed Tomography (CT) scanners. *Id.* ¶ 11. Siemens China supplied these devices to public hospitals in North Korea and China. *See, e.g., id.* ¶ 16.

Mr. Liu's core allegation relates to his alleged concern about improper payments he suspected were being made indirectly to officials in North Korea and China. *Id.* ¶ 15. According to the amended complaint, Siemens China would submit inflated bids to provide imaging devices to public hospitals in those countries. *See id.* ¶ 17. When one of the bids was accepted, Siemens China allegedly would sell the equipment through an intermediary located in North Korea, China, or Hong Kong. *Id.* ¶ 15. The intermediary allegedly would then resell the equipment to the hospital that had accepted the bid. *Id.* ¶ 18. According to the amended complaint, hospitals would pay the intermediary the full bid price, but not all of the money made its way to Siemens.

*Id.* Mr. Liu speculated that the difference was "used to pay kick-backs to the hospital procurement and other officials involved in the scheme." *Id.* ¶ 19; *see also id.* ¶ 20.

Mr. Liu claims that he raised concerns about the transactions at issue to his superiors in China and Germany, to an internal review team, and through the company's compliance hotline. *See id.* ¶¶ 50, 52, 57, 62, 74, 89–91, 103, 108, 127–28, 153–54, 156, 161–66. Siemens allegedly reprimanded Mr. Liu for his behavior. He claims to have received a negative performance review in 2009 and refused to agree to a performance-improvement plan. *Id.* ¶ 55. Siemens allegedly denied his request to attend a compliance conference in Germany. *Id.* ¶ 88. Over time, other employees took over his responsibilities. *See id.* ¶¶ 114, 130, 133–34. In November 2010, Siemens China informed Mr. Liu that his contract would not be renewed. *Id.* ¶ 157. The contract lapsed in March 2011. *Id.* ¶ 167. It was not until two months later that Mr. Liu reported his concerns to the Securities and Exchange Commission, his first alleged contact with anyone in the United States. *Id.* ¶ 168. He filed this action on January 15, 2013, alleging that "Siemens demoted, harassed, suspended and then discharged [him] because of his objections and complaints about violations of the FCPA and his attempts to curtail such violations." *Id.* ¶ 173.

**II.    Statutory Background**

The sole count of the amended complaint alleges that Siemens violated the Anti-Retaliation Provision of the Dodd-Frank Wall Street Reform and Consumer Protection Act, 15 U.S.C. § 78u-6(h)(1)(A). That section provides in relevant part:

> No employer may discharge, demote, suspend, threaten, harass, directly or indirectly, or in any other manner discriminate against, a whistleblower in the terms and conditions of employment because of any lawful act done by the whistleblower—
>
> \*    \*    \*
>
> (iii)    in making disclosures that are required or protected under the Sarbanes-Oxley Act of 2002 (15 U.S.C. § 7201 *et seq.*), the Securities Exchange Act

3

> of 1934 (15 U.S.C. § 78a *et seq*.), including section 10A(m) of such Act (15 U.S.C. § [78j-1(m)]), section 1513(e) of Title 18, and any other law, rule, or regulation subject to the jurisdiction of the Commission.

A different provision of the Dodd-Frank Act defines "whistleblower" as "any individual who provides . . . information relating to a violation of the securities laws to the [Securities and Exchange] Commission, in a manner established, by rule or regulation, by the Commission." 15 U.S.C. § 78u-6(a)(6). The Anti-Retaliation Provision is silent about reaching extraterritorial conduct—nothing on the face of the provision suggests that Congress intended it to apply abroad. By contrast, in other sections of the Dodd-Frank Act, Congress expressly authorized extraterritorial jurisdiction over certain enforcement actions "brought or instituted by the Commission or the United States alleging a violation of the antifraud provisions of this chapter." 15 U.S.C. § 78aa(b). Indeed, the title of that provision is "extraterritorial jurisdiction." *Id*. There is no colorable claim that the "extraterritorial jurisdiction" section applies to private anti-retaliation actions like the one here.

## ARGUMENT

To survive dismissal, a plaintiff must "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Courts accept the allegations in the complaint as true at this stage, but a claim "may still fail as a matter of law if [it] is not legally feasible." *Linzer Prods. Corp. v. Sekar*, 499 F. Supp. 2d 540, 547 (S.D.N.Y. 2007) (ellipsis omitted). Dismissal is also appropriate if the complaint fails to allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The amended complaint in this case fails to state a claim for two independent reasons. First, the Anti-Retaliation Provision of the Dodd-Frank Act does not reach the extraterritorial conduct and parties alleged here. Second, Mr. Liu has failed to identify any law that required or

protected his statements.[1]  These fundamental problems with the amended complaint cannot be cured by further amendment, so it should be dismissed with prejudice.  *See Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *Wallace v. Conroy*, 945 F. Supp. 628, 639 (S.D.N.Y. 1996).

## I. The Anti-Retaliation Provision Does Not Reach The Extraterritorial Conduct Alleged In The Amended Complaint.

Mr. Liu's attempt to apply the Anti-Retaliation Provision to a German company on the basis of his alleged treatment by a Chinese company in a foreign country is foreclosed as a matter of law.  The Supreme Court has made clear that federal statutes do not apply to foreign conduct unless Congress has given a "clear indication" otherwise.  *Kiobel v. Royal Dutch Petroleum Co.*, 133 S. Ct. 1659, 1664 (2013); *Morrison v. Nat'l Australia Bank Ltd.*, 130 S. Ct. 2869, 2877 (2010) ("When a statute gives no clear indication of an extraterritorial application, it has none.").  It is indeed a "longstanding principle of American law that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States."  *Morrison*, 130 S. Ct. at 2877 (quotation marks omitted).  The presumption that a statute's reach ends at the U.S. border can be overcome only where Congress has "clearly expressed" an "affirmative intention" to give the law "extraterritorial effect."  *Id.*  Courts have made clear that the extraterritorial application of a federal statute is the exception, not the rule.

---

[1]  In the event that the Court denies this motion, Siemens AG reserves its right to seek dismissal based on the *forum non conveniens* doctrine at a later stage of proceedings.  Defendants are not required to move to dismiss on this ground in their initial responsive pleading.  *See Jacobs v. Felix Bloch Erben Verlag*, 160 F. Supp. 2d 722, 742 (S.D.N.Y. 2001); *Snam Progetti S.P.A. v. Lauro Lines*, 387 F. Supp. 322, 323 (S.D.N.Y. 1974).  By the same token, while Siemens AG noted in its pre-motion letter that the amended complaint could also be dismissed because Mr. Liu has sued the wrong entity—Siemens AG, rather than his actual employer, as the statute provides—in the interest of simplifying the issues at this stage, it will reserve that issue for presentation in a motion for summary judgment, if necessary.

*See, e.g.*, *Kiobel*, 133 S. Ct. at 1669 (Alien Tort Statute does not apply extraterritorially); *Morrison*, 130 S. Ct. at 2883 (same for § 10(b) of the Exchange Act); *Norex Petroleum Ltd. v. Access Industries, Inc.*, 631 F.3d 29, 33 (2d Cir. 2010) (same for a provision of RICO). Indeed, even before *Morrison* reaffirmed the presumption that federal statutes do not apply to extraterritorial conduct, the First Circuit had held that an anti-retaliation provision in the Sarbanes-Oxley Act did not reach beyond the United States. *See Carnero v. Boston Sci. Corp.*, 433 F.3d 1, 7–9 (1st Cir. 2006).

Congress did not intend Dodd-Frank's Anti-Retaliation Provision to reach foreign conduct either. The only court that has decided the issue squarely held that the law has no extraterritorial effect. *See Asadi v. G.E. Energy (USA), LLC*, No. 12-345, 2012 WL 2522599, at *5 (S.D. Tex. June 28, 2012) ("The Court holds that the Anti-Retaliation Provision does not extend to or protect [the plaintiff's] extraterritorial whistleblowing activity."). As the court explained, "the language of the Dodd-Frank Anti-Retaliation Provision is ***silent*** regarding whether it applies extraterritorially." *Id.* at *4 (emphasis added). The Supreme Court, of course, has explicitly endorsed "the traditional principle that ***silence means no extraterritorial application***." *Morrison*, 130 S. Ct. at 2881 (emphasis added). Of course, Congress was well aware of the presumption against the extraterritorial reach of federal statutes when it passed the Dodd-Frank Act. Congress enacted that law shortly after the Supreme Court decided *Morrison* and against the backdrop of numerous other cases emphasizing the presumption against extraterritoriality, including in the whistleblower context. *See, e.g.*, *Carnero*, 433 F.3d at 7–9; *see also EEOC v. Arabian Am. Oil Co.*, 499 U.S. 244, 248 (1991) ("*Aramco*") ("We assume that Congress legislates against the backdrop of the presumption against extraterritoriality.").

6

In fact, Congress showed that it understood the "need to make a clear statement that a statute applies overseas," *Aramco*, 499 U.S. at 258, in other sections of the Dodd-Frank Act. For example, it expressly included a provision entitled "[e]xtraterritorial jurisdiction" that empowers the federal government to prosecute extraterritorial securities fraud in certain cases. *See* 15 U.S.C. § 78aa(b) (extending this jurisdiction to cases "brought or instituted by the Commission or the United States alleging a violation of the antifraud provisions of this chapter"). In a section of the law called "Study on Extraterritorial Private Rights of Action," Congress also directed the SEC to "solicit public comment and thereafter conduct a study to determine the extent to which private rights of action under the ***antifraud provisions of the Securities and Exchange Act of 1934*** . . . should be extended to cover" extraterritorial conduct. Dodd-Frank Act, Pub. L. No. 111-203, § 929Y(a), 124 Stat. 1376, 1871 (2010) (emphasis added). Those antifraud provisions do not include the Anti-Retaliation Provision at issue here.[2]

Courts have routinely held that Congress's decision to address extraterritoriality expressly in one part of a statute is clear evidence that other provisions that are silent as to extraterritoriality do not reach foreign conduct. *See Morrison*, 130 S. Ct. at 2883 ("[W]hen a statute provides for some extraterritorial application, the presumption against extraterritoriality operates to limit that provision to its terms.").[3] The *Asadi* decision explained that the same

---

[2]   Nothing in the subsequent report issued by the SEC even hinted that the Anti-Retaliation Provision might apply outside the United States. *See* SEC Staff, *Study on the Cross-Border Scope of the Private Right of Action Under Section 10(b) of the Securities Exchange Act of 1934* (Apr. 2012), *available at* http://www.sec.gov/news/studies/2012/929y-study-cross-border-private-rights.pdf. The entire study focused on a possible "'extraterritorial extension' or 'cross-border extension' of the Section 10(b) private right of action." *Id.* at 5.

[3]   *See also Aramco*, 499 U.S. at 258 ("Congress' awareness of the need to make a clear statement that a statute applies overseas is amply demonstrated by the numerous occasions on which it has expressly legislated the extraterritorial application of a statute."); *Carnero*, 433 F.3d at 10 ("That Congress provided for extraterritorial reach as to Section 1107 [of the Sarbanes-
*Footnote continued on next page*

7

reasoning applies here:  The fact that Congress expressly provided for the extraterritorial reach of a specific set of government enforcement actions in Section 929P(b) of the Dodd-Frank Act confirms that it "did not intend for private causes of action under the statute's Anti-Retaliation Provision to have extraterritorial scope."  *Asadi*, 2012 WL 2522599, at *4 n.45.

In the pre-motion letter he sent to the Court on June 18, Mr. Liu did not cite any precedent that conflicts with *Asadi* or attempt to distinguish that case.  Instead, he simply argued that *Asadi* was wrongly decided for three reasons.  None of the arguments survives scrutiny.

***First***, Mr. Liu argues that "the plain language of the statute contains very broad language" that sweeps in both domestic and foreign employees.  Plaintiff's Pre-Motion Letter (June 18, 2013), at 2.  The Anti-Retaliation Provision, he points out, provides a cause of action for "an[y] individual" who alleges unlawful discrimination.  15 U.S.C. § 78u-6(h)(1)(B)(i).  Congress also defined "whistleblower" to include "any individual" who provides the SEC with information about a securities violation.  *Id.* § 78u-6(a)(6).  The Supreme Court has made clear, however, that this type of broad definitional language is insufficient to overcome the presumption against extraterritoriality.  In *Morrison*, it held that Section 10(b) of the Securities Exchange Act applied only to domestic conduct even though the law made it unlawful for "any person" to violate the SEC's fraud rules.  130 S. Ct. at 2881–82 (quoting 15 U.S.C. § 78j(b)).  The Second Circuit has similarly held that the Racketeer Influenced and Corrupt Organizations Act does not authorize private actions based on extraterritorial conduct even though the statute says that "[a]ny person" injured by racketeering activity may sue in federal court.  *See Norex*,

---

Oxley Act] but did not do so as to Section 806 . . . conveys the implication that Congress did not mean Section 806 to have extraterritorial effect."); *see generally Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate includes or exclusion.").

631 F.3d at 33 (citing 18 U.S.C. § 1964(c)).  For the same reason, the broad language in the Anti-Retaliation Provision is insufficient to rebut the presumption against extraterritoriality. Indeed, this very argument was raised and rejected in *Asadi*.  2012 WL 2522599, at *4 n.38.

*Second*, Mr. Liu argues that "by specifically providing for extraterritorial jurisdiction in a related section of the statute, Congress clearly evidenced its intention to protect SEC whistleblowers located abroad."  Plaintiff's Pre-Motion Letter at 2.  This argument is simply wrong, and contradicts numerous authorities that say just the opposite. *See supra* pp. 7–8; *Asadi*, 2012 WL 2522599, at *4 ("The language of Dodd-Frank's Section 929P(b) thus strengthens the conclusion that the Anti-Retaliation Provision does not apply extraterritorially.").  The straightforward reasoning in *Asadi* is consistent with a long line of federal precedent.  *See Morrison*, 130 S. Ct. at 2883 ("[W]hen a statute provides for some extraterritorial application, the presumption against extraterritoriality operates to limit that provision to its terms."); *see also Aramco*, 499 U.S. at 258; *Carnero*, 433 F.3d at 10.

*Third*, Mr. Liu argues that an SEC regulation providing that employees of a foreign government are not eligible for whistleblower awards means that the Anti-Retaliation Provision must apply extraterritorially.  *See* Plaintiff's Pre-Motion Letter at 2–3 (citing 17 C.F.R. § 240.21F-8(c)(2)).  This argument fails as well.  As an initial matter, Mr. Liu has not cited any authority for the proposition that an agency promulgating regulations *after* a statute was passed can somehow provide the clear indication that *Congress* intended the law to apply to foreign conduct.  *See, e.g.*, *Morrison*, 130 S. Ct. at 2877 (holding that the presumption against extraterritoriality can be overcome only by an "affirmative intention of the Congress clearly expressed").  In any event, the SEC's rule is inapposite:  It has nothing to do with private anti-retaliation suits and does not interpret the Anti-Retaliation Provision.  The cited rule simply

9

explains that whistleblowers who provide information that leads to a successful ***government enforcement action*** may not collect an award if they work for a foreign government.  *See* 17 C.F.R. §§ 240.21F-3, 240.21F-8.  At most, the regulation confirms what the statute already expressly provides:  The federal government can bring some enforcement actions based on extraterritorial conduct.  It does not offer any indication, let alone a "clear indication," that Congress intended the Anti-Retaliation Provision to extend to foreign conduct.

Finally, Mr. Liu attempts to get around the extraterritoriality analysis altogether by claiming that the relevant conduct in this case is domestic, not foreign.  In his pre-motion letter, he pointed to the fact that Siemens AG's American Depository Receipts are listed on the New York Stock Exchange.  *See* Plaintiff's Pre-Motion Letter at 2.  This argument borders on the frivolous.  As the Second Circuit has explained, "simply alleging that some domestic conduct occurred cannot support a claim of domestic application."  *Norex*, 631 F.3d at 33; *see also Morrison*, 130 S. Ct. at 2884 ("[T]he presumption against extraterritorial application would be a craven watchdog indeed if it retreated to its kennel whenever *some* domestic activity is involved in the case.").  Indeed, the "idea that a foreign company is subject to U.S. Securities laws everywhere it conducts foreign transactions merely because it has 'listed' some securities in the United States is simply contrary to the spirit of *Morrison*."  *In re Royal Bank of Scotland Group*, 765 F. Supp. 2d 327, 336 (S.D.N.Y. 2011).  The real question is whether the core conduct regulated by the statute at issue occurred in the United States.  *See Morrison*, 130 S. Ct. at 2884.  That rule is easy to apply here:  None of the adverse employment decisions alleged in the amended complaint were made or carried out in the United States.  The plaintiff complains only about his treatment by a Chinese company while he was working in China.  The connection to the United States is even more attenuated here than it was in *Asadi*, where the defendant (a U.S.

company) fired an American citizen who was based in the United States but working in Jordan. Every relevant aspect of this case is foreign: The plaintiff is Taiwanese; worked for a Chinese business; became suspicious about transactions in China, Hong Kong, and North Korea; reported his concerns to supervisors in China and Germany; and brought suit against a German company.

Because the Anti-Retaliation Provision does not apply extraterritorially, Mr. Liu's claim must be dismissed.

## II. The Amended Complaint Fails To Allege That Mr. Liu Engaged In Protected Activity.

Even if Mr. Liu could succeed on his extraterritoriality arguments, his amended complaint fails anyway. To prevail, Mr. Liu must show that he suffered retaliation because the disclosures he made about possible violations of the Foreign Corrupt Practices Act were "***required or protected*** under the Sarbanes-Oxley Act of 2002, the Securities Exchange Act of 1934, including section 10A(m) of such Act, section 1513(e) of Title 18, [or] any other law, rule, or regulation subject to the jurisdiction of the Commission." 15 U.S.C. § 78u-6(h)(1)(A)(iii) (emphasis added) (citations omitted); *see Egan*, 2011 WL 1672066, at *6 ("Merely alleging the violation of a law or rule under the SEC's purview is not enough; a plaintiff must allege that a law or rule in the SEC's jurisdiction explicitly requires or protects disclosure of that violation."). Mr. Liu has not satisfied this fundamental requirement.

***First***, the amended complaint suggests that Mr. Liu's internal disclosures were protected by the Foreign Corrupt Practices Act itself. *See* Am. Compl. ¶ 175. The FCPA falls within the SEC's jurisdiction, but none of its provisions required or protected the alleged statements at issue here. *See Nollner v. Southern Baptist Convention, Inc.*, 852 F. Supp. 2d 986, 998 (M.D. Tenn. 2012) ("[T]he FCPA does not itself protect whistleblowers: it contains no anti-retaliation

11

provisions and affords no private cause of action.").[4]  This case is on all fours with *Asadi*: "Although [the plaintiff] has alleged that his internal disclosures . . . pertained to bribery of foreign officials, he has cited . . . no provision of the FCPA that 'protects' or 'requires' his internal report of the alleged bribery.  Therefore, the [Anti-Retaliation] Provision does not protect [him] against retaliation for his disclosures of the alleged bribery."  *Asadi*, 2012 WL 2522599, at *6.

   ***Second***, Mr. Liu argues that his statements were protected by Section 806 of the Sarbanes-Oxley Act.  *See* Plaintiff's Pre-Motion Letter at 3; Am. Compl. ¶¶ 169, 175.  But Section 806 does not save the amended complaint.  Courts have made clear that the law provides ***no*** protection for foreign employees working primarily outside the United States.  The First Circuit, for example, squarely rejected the argument that Section 806 protected an Argentinian employee working for the Argentinian and Brazilian subsidiaries of an American company.  *See Carnero*, 433 F.3d at 4, 18 (holding that the law did not "protect[] foreign citizens working outside of the United States for foreign subsidiaries of covered companies").  In a more recent case, the Administrative Review Board of the U.S. Department of Labor held that Section 806 did not protect a foreign citizen working in Colombia for a Colombian company.  *See In re Villanueva*, ARB Case No. 09-108, ALJ Case No. 2009-SOX-006, 2011 WL 6981989, at *1, *10 (Dec. 22, 2011) (en banc).  Even more recently, the district court in *Asadi* held that Section 806 did not protect statements made by an American employee working for GE Energy in Jordan.

---

[4]   Mr. Liu attempts to distinguish *Nollner* by pointing out that "the whistleblower in that case complained about FCPA violations at a *private* company."  Plaintiff's Pre-Motion Letter at 3.  That distinction makes no difference here.  It is true that FCPA violations fall within the SEC's enforcement authority only if they are committed by a public company.  *See Nollner*, 852 F. Supp. 2d at 996.  But the relevant point is that nothing in the FCPA "protects" or "requires" the internal disclosure of potential violations, either at a privately held company or a publicly traded one.  *Id.* at 998.  Mr. Liu has not identified any statutory provision to the contrary.

*See Asadi*, 2012 WL 2522599, at *1, *5–6.  The plaintiff therefore could not rely on Sarbanes-Oxley as the law that protected or required his statements for the purpose of bringing a claim under the Anti-Retaliation Provision.  *Id.* at *5–6.  The protection offered by Section 806 stops at the territorial boundaries of the United States.

Even leaving aside the territorial limits of Section 806, the provision protects employees only to the extent that they report violations of "(1) 18 U.S.C. § 1341 (mail fraud); (2) 18 U.S.C. § 1343 (wire fraud); (3) 18 U.S.C. § 1344 (bank fraud); (4) 18 U.S.C. § 1348 (securities fraud); (5) any rule or regulation of the SEC; or (6) any provision of federal law relating to fraud against shareholders."  *Allen v. Admin. Review Bd.*, 514 F.3d 468, 476–77 (5th Cir. 2008).  The FCPA is not listed as one of those enumerated categories, and the agency with authority to enforce Section 806 has explained that "a violation of the FCPA is not within the scope of SOX."  *In re Gupta*, Case No. 2010-SOX-54, 2011 WL 121916, at *5 (Dep't of Labor Jan. 7, 2011); *see also Day v. Staples, Inc.*, 555 F.3d 42, 57 n.15 (1st Cir. 2009).  The only category into which such a violation could plausibly fall is the catchall for "fraud against shareholders."  For Mr. Liu's disclosures to be protected under this provision, however, he would have had to believe that Siemens acted with an "intent to deceive, manipulate, or defraud" its shareholders.  *Allen*, 514 F.3d at 480.  He has made no such allegation in his amended complaint and therefore cannot rely on the catchall provision of Sarbanes-Oxley to pursue his claim under the Anti-Retaliation Provision.

Finally, Mr. Liu's claims would also properly be dismissed because he was not a protected "whistleblower" before he brought his concerns to the SEC, which did not occur until

well after his contract expired and all of the alleged retaliation had taken place.[5]  *See* Am. Compl. ¶¶ 167–68.  In light of all the foregoing problems with the plaintiff's claims, the Court does not need to reach this ground.  But the law defines a "whistleblower" against whom retaliation is prohibited as someone who provides "information relating to a violation of the securities laws ***to the Commission***, in a manner established, by rule or regulation, by the Commission."   15 U.S.C. § 78u-6(a)(6) (emphasis added).   Under a commonsense, straightforward reading of the statute, the Anti-Retaliation Provision applies only after communication with the SEC.  Indeed, the SEC—which Mr. Liu insists the Court should defer to in interpreting the statute—has enacted interpretive regulations making clear that whistleblowers are those who "provide the Commission with information."  17 C.F.R. § 240.21F-2(a)(1).  While another judge in this district has rejected that interpretation, *Egan*, 2011 WL 1672066, at *3–5 (disagreeing that providing information to the Commission is a necessary condition to "whistleblower" status under the Anti-Retaliation Provision), Siemens AG respectfully suggests that this Court should not depart from the statute's plain meaning.

Mr. Liu has provided no indication of any statute that might have protected or required his internal disclosures.  As a result, the amended complaint must be dismissed.

## CONCLUSION

For the foregoing reasons, the amended complaint should be dismissed with prejudice.

---

[5]	Contrary to Mr. Liu's claim in his June 18 letter, Siemens AG does ***not*** "acknowledge[] that Mr. Liu is entitled to Dodd-Frank whistleblower protection if he engaged in conduct that was protected under the Sarbanes-Oxley Act."  Plaintiff's Pre-Motion Letter at 3.

Respectfully Submitted,

Dated: July 2, 2013

*/s/ Brant W. Bishop, P.C.*

Brant W. Bishop, P.C.
Ragan Naresh (*pro hac vice*)
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Suite 1200
Washington, D.C. 20005
Tel.: (202) 879-5000
brant.bishop@kirkland.com
ragan.naresh@kirkland.com

*Counsel for Siemens AG*

## CERTIFICATE OF SERVICE

    I, Brant W. Bishop, hereby certify that I caused a true and correct copy of the foregoing Memorandum of Law in Support of Siemens AG's Motion to Dismiss to be served upon all counsel of record registered through the Court's ECF system.

On this 2nd day of July, 2013.

*/s/ Brant W. Bishop, P.C.*

Brant W. Bishop, P.C.

*Counsel for Siemens AG*