```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
                                    :
MENG-LIN LIU,                       :
                                    :    13 Civ. 317 (WHP)
                 Plaintiff,         :
                                    :    MEMORANDUM & ORDER
         -against-                  :
                                    :
SIEMENS A.G.,                       :
                                    :
                 Defendant.         :
                                    :
------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/21/13

WILLIAM H. PAULEY III, District Judge:

Plaintiff Meng-Lin Liu brings this action under the Anti-Retaliation Provision of the Dodd-Frank Act. Defendant Siemens A.G. moves to dismiss under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, Siemens' motion is granted.

## BACKGROUND

Meng-Lin Liu is a resident of Taiwan. In March 2008, Siemens China Ltd. hired Liu as the Group Compliance Officer for the company's healthcare division. Later, he became Division Compliance Officer. Siemens China is a subsidiary of Siemens A.G., a German corporation. The healthcare division of Siemens China develops and manufactures medical equipment for sale to hospitals. Liu alleges the healthcare division engaged in a kickback scheme. According to his amended complaint, Siemens China routinely made inflated bids to sell medical imaging equipment to public hospitals in North Korea and China. When the bids were accepted, the equipment was sold through intermediaries who remitted a portion of the purchase price to the officials who accepted the bids.

-1-

In October 2009, Liu raised concerns about a deal in North Korea that he believed circumvented internal compliance procedures put in place after Siemens A.G.'s 2008 guilty plea to Foreign Corrupt Practices Act (FCPA) charges. In December 2009, he received a negative performance evaluation he believes was retaliation for raising these concerns. But Liu continued to agitate, sending e-mails and giving presentations regarding what he viewed as systematic problems with Siemens' compliance procedures. Specifically, he noted the deviations between Siemens' bids to hospitals and the money Siemens actually received from third-party intermediaries in the transactions.

In April 2010, Liu attempted to implement a new procedure whereby Siemens China, the purchasing hospital, and the third-party intermediary would execute a single "tripartite" contract, which he believed would eliminate corruption risks. However, his superiors quashed any use of his new procedure and then retaliated by rejecting his application for travel expenses to attend Siemens' internal global healthcare compliance conference in Germany. In June 2010, Liu refused to approve the use of particular intermediaries for bids to sell equipment to army hospitals in China. He was abruptly stripped of his authority to make such approvals.

In August 2010, Siemens China removed Liu's responsibilities for overseeing any approval and compliance issues, limiting his role to "training, process improvements and other special tasks assigned by [the Regional Compliance Officer]."[1] Liu used his newfound free time to compile documentation comparing price deviations between accepted bids and actual sales prices to intermediaries for all Chinese transactions in a three-month period. He found markups ranging from 25 to 133 percent. In October, Liu presented his findings to Stefan Mueller,

---

[1] Am. Compl. ¶ 134.

Siemens China's CFO for Healthcare.

A little over two weeks later, Liu spoke at a Siemens town hall meeting in Shanghai attended by Siemens China President and CEO Mei-Wei Cheng. Liu asserted that "compliance was low and that if [Siemens] were to follow compliance guidelines, Siemens would lose 30% of our healthcare business."[2] That same day, Liu received a letter instructing him not to report to work for the three months remaining on his employment contract. That contract, and Liu's tenure with Siemens China, expired in March 2011. On May 17, 2011, Liu reported possible FCPA violations to the SEC.

## DISCUSSION

I. Legal Standard

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). To determine plausibility, courts follow a "two-pronged approach." Iqbal, 556 U.S. at 679. "First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (internal punctuation omitted). Second, a court determines "whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010) (quoting Iqbal, 556 U.S. at 679). On a motion to dismiss, courts may consider "facts stated on the face of the complaint, in the

---

[2] Am. Compl. ¶ 156.

documents appended to the complaint or incorporated in the complaint by reference, and . . . matters of which judicial notice may be taken." Allen v. WestPoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991).

II. The Dodd Frank-Act Anti-Retaliation Provision

Liu brings this action under the Anti-Retaliation Provision of the Dodd-Frank Act, claiming he was illegally terminated for reporting possible FCPA violations. The Dodd-Frank Act's Anti-Retaliation Provision provides, in relevant part, that

> No employer may discharge, demote, suspend, threaten, harass, directly or indirectly, or in any other manner discriminate against, a whistleblower in the terms and conditions of employment because of any lawful act done by the whistleblower . . . in making disclosures that are required or protected under the Sarbanes-Oxley Act of 2002 (15 U.S.C. 7201 et seq.), [the Securities Exchange Act of 1934 (15 U.S.C. § 78a et seq.)], section 1513(e) of Title 18, and any other law, rule, or regulation subject to the jurisdiction of the [SEC].

15 U.S.C. § 78u-6(h)(1)(a). The Dodd-Frank Act defines a "whistleblower" as "any individual who provides . . . information relating to a violation of the securities laws to the [SEC], in a manner established, by rule or regulation, by the [SEC]." 15 U.S.C. § 78u-6(a)(6).

a. Extraterritoriality

"'Unless there is the affirmative intention of the Congress clearly expressed' to give a statute extraterritorial effect, 'we must presume it is primarily concerned with domestic concerns.'" Morrison v. Nat'l Austl. Bank Ltd., 130 S. Ct. 2869, 2877 (2010). "When a statute gives no clear indication of an extraterritorial application, it has none." Morrison, 130 S. Ct. at 2878. This rule "reflects the 'presumption that United States law governs domestically but does not rule the world.'" Kiobel v. Royal Dutch Petroleum Co., 133 S. Ct. 1659, 1664 (2013)

(quoting Microsoft Corp. v. AT&T Corp., 550 U.S. 437, 454 (2007)). The only court to have considered the issue has held that the Anti-Retaliation Provision does not apply extraterritorially. Asadi v. G.E. Energy (USA), LLC, No. 4:12-345, 2012 WL 2522599 (S.D. Tex. June 28, 2013), aff'd on other grounds, 720 F.3d 620 (5th Cir. 2013).

"[T]he language of the Dodd-Frank Anti-Retaliation Provision is silent regarding whether it applies extraterritorially." Asadi, 2012 WL 2522599, at *4. This silence invokes a strong presumption against extraterritoriality. It is of little moment that the provision uses broad language such as "any individual" and "no employer." Such language does not give a clear indication of intent for the protections to apply overseas. See Morrison, 130 S. Ct. at 2881-83 (holding section 10(b) of the Securities Exchange Act of 1934 does not apply extraterritorially despite language stating "[i]t shall be unlawful for any person" to take certain actions).

The Dodd-Frank Act does have some extraterritorial application, which reinforces the conclusion the Anti-Retaliation Provision is purely a domestic concern. Section 929P(b) permits the SEC to bring enforcement actions for certain conduct or transactions outside the United States. This provision "would be quite superfluous" if the rest of the Dodd-Frank Act already applied extraterritorially. Morrison, 130 S. Ct. at 2883. And "when a statute provides for some extraterritorial application, the presumption against extraterritoriality operates to limit that provision to its terms." Morrison, 130 S. Ct. at 2883. Therefore, the "conclusion against extraterritorial application is reinforced by Section 929P(b) of Dodd-Frank, which explicitly addresses [the] extraterritorial scope of the statute in a limited context." Asadi, 2012 WL 2522599, at *4.

Liu also points to an SEC regulation which he argues shows that foreign employees are included within the definition of "whistleblower." See 17 C.F.R. § 240.21F-8(c)(2). This regulation excludes employees and officers of foreign governments from eligibility for whistleblower awards. But these regulations are inapposite. The issue is not whether persons located abroad can be "whistleblowers" and thus eligible for whistleblower awards, but whether the Anti-Retaliation Provision's protections extend to overseas whistleblowers. The fact that a person outside the United States may be a "whistleblower" under Dodd-Frank does not compel the conclusion he is protected by the Anti-Retaliation Provision. Cf. 17 C.F.R. § 240.21F-2(b)(1)(iii) (anti-retaliation protections are not tied to whether a person is eligible for a whistleblower award).

Liu argues that Morrison does not apply at all, because that case concluded section 10(b) of the Securities Exchange Act of 1934 did not provide a cause of action to foreign plaintiffs who had purchased shares of common stock on a foreign exchange, whereas here, Siemens has listed American Depository Receipts (ADRs) on the New York Stock Exchange. First, as a factual matter, the issuer in Morrison also had ADRs that traded on the NYSE. Morrison, 130 S. Ct. at 2875. The fact that Siemens ADRs trade on the NYSE subjects it to U.S. securities laws within the U.S., but does not affect Morrison's requirement that there be some sign of Congress' intention for the Anti-Retaliation provision to apply overseas. "The idea that a foreign company is subject to U.S. Securities laws everywhere it conducts foreign transactions merely because it has 'listed' some securities in the United States is simply contrary to the spirit of Morrison." In re Royal Bank of Scotland Grp. PLC Sec. Litig., 765 F.Supp.2d 327, 336 (S.D.N.Y. 2011).

The Court acknowledged that "it is a rare case of prohibited extraterritorial application that lacks all contact with the territory of the United States. But the presumption against extraterritorial application would be a craven watchdog indeed if it retreated to its kennel whenever some domestic activity is involved in the case." Morrison, 130 S. Ct. at 2884 (emphasis in original). This is a case brought by a Taiwanese resident against a German corporation for acts concerning its Chinese subsidiary relating to alleged corruption in China and North Korea. The only connection to the United States is the fact that Siemens has ADRs that are traded on an American exchange, just as in Morrison.

There is simply no indication that Congress intended the Anti-Retaliation Provision to apply extraterritorially. Liu urges that it would be illogical for the overseas employees of publicly-traded companies not to be protected for whistleblowing activities, but the Supreme Court has warned against "divining what Congress would have wanted if it had thought of the situation before the court." Morrison, 130 S. Ct. at 2881. Such an intrusion into the employment law of a foreign nation could disrupt the "delicate field of international relations," an interest protected by the presumption against extraterritoriality. Kiobel, 133 S. Ct. at 1664 (quoting Benz v. Compania Naviera Hidalgo, S.A., 353 U.S. 138, 147 (1957)). Because the Anti-Retaliation Provision does not apply overseas, Liu's complaint must be dismissed.

b. Whether Liu's Disclosures Were "Required or Protected"

The portion of the Anti-Retaliation Provision that Liu relies on protects employees who are retaliated against for making disclosures "required or protected" under the Sarbanes-Oxley Act, the Securities Exchange Act of 1934, 18 U.S.C. § 1513(e), or "any other law, rule or regulation subject to the jurisdiction of the [SEC]." 15 U.S.C. § 78u-6(h)(1)(A)(iii).

Siemens argues Liu's complaint must be dismissed for the additional reason that Liu's disclosures were not "required or protected" under any of these provisions. The FCPA itself does not require or protect any disclosures. See Nollner v. S. Baptist Convention, Inc., 852 F. Supp. 2d 986, 988 (M.D. Tenn. 2012) (Trauger, J.). Liu argues his disclosures are protected by section 806 of the Sarbanes-Oxley Act.

    1. Extraterritorial Application of Section 806 of the Sarbanes-Oxley Act

Liu admits that section 806 does not apply extraterritorially. See Carnero v. Bos. Scientific Corp., 433 F.3d 1, 6-19 (1st Cir. 2006); Asadi, 2012 WL 2522599, at *5-6. However, he argues that "[t]he criteria for triggering Dodd-Frank anti-retaliation protection is[] whether the disclosures are of a type that is protected by SOX, not whether the specific employee is protected by SOX based on his location domestically or overseas."[3] But Dodd-Frank protects against retaliation for making disclosures that "are required or protected," 18 U.S.C. § 78u-6(h)(1)(a) (emphasis added), not disclosures that "are of a type" protected by other statutes. Because section 806 of Sarbanes-Oxley does not apply extraterritorially, it does not protect Liu's disclosures, and so the Dodd-Frank Act does not protect Liu from retaliation for making those disclosures.

    2. Whether FCPA Violations Are Within the Scope of Section 806 of the Sarbanes-Oxley Act

Beyond section 806's lack of extraterritoriality, Siemens argues that disclosures of FCPA violations are never "required or protected" by section 806 of Sarbanes-Oxley. Section 806 protects employees who report mail fraud, wire fraud, bank fraud, securities fraud, violations

---

[3] Pl.'s Mem. of Law at 12 (emphasis in original).

of "any rule or regulation of the Securities and Exchange Commission" or "any provision of Federal law relating to fraud against shareholders." 18 U.S.C. § 1514A; see also Allen v. Admin. Review Bd., 514 F.3d 468, 476-77 (5th Cir. 2008). FCPA violations could only conceivably fall within "fraud against shareholders," but Liu has alleged no intent to defraud shareholders. The Department of Labor has found that "a violation of the FPCA is not within the scope of SOX." In re Gupta, Case No. 2010-SOX-54, 2011 WL 121916, at *5 (Dep't of Labor Jan. 7, 2011). Liu also alleges in his opposition to Siemens' motion that Liu reported violations of SEC Rule 13b2-1, which prohibits falsifying "any book, record or account subject to Section 13(b)(2)(A) of the Securities Exchange Act. However, nowhere in Liu's amended complaint does he mention that rule or specifically address recordkeeping violations. The complaint only alleges reporting of FCPA violations. Liu's amended complaint must therefore be dismissed for the additional reason that section 806 of Sarbanes-Oxley does not "require or protect" disclosures of FCPA violations, regardless of the extraterritorial application of that section.

   c. Whether Liu is a "Whistleblower" for the Purposes of the Dodd-Frank Anti-Retaliation Provision

To qualify as a "whistleblower" under the Dodd-Frank Act, a person must provide "information relating to a violation of the securities laws to the [SEC], in a manner established, by rule or regulation, by the [SEC]." 15 U.S.C. § 78u-6(a)(6). Liu did not report any possible violations to the SEC until after his employment at Siemens China had ended. (Am. Compl. ¶ 168.) Siemens therefore argues Liu was not a "whistleblower" at the time he was terminated and was unprotected by the Anti-Retaliation Provision. The Dodd-Frank Act protects

> a whistleblower in the terms and conditions of employment
> because of any lawful act done by the whistleblower . . . (iii) in

> making disclosures that are required or protected under the [1] Sarbanes-Oxley Act of 2002 (15 U.S.C. 7201 et seq.), [2] [the Securities Exchange Act of 1934 (15 U.S.C. § 78a et seq.)], [3] section 1513(e) of Title 18, and [4] any other law, rule, or regulation subject to the jurisdiction of the [SEC].

15 U.S.C. § 78u-6(h)(1)(A) (emphasis added).

However, the interplay between the "whistleblower" definition and the Anti-Retaliation Provision is complicated by the fact that the enumerated disclosures protected by the Anti-Retaliation Provision in 15 U.S.C. § 78u-6(h)(1)(A)(iii) do not require disclosures to the SEC. For example, Sarbanes-Oxley protects certain internal disclosures, but does not require those disclosures be reported to the SEC.

Given this apparent incongruity, other judges have found that "[t]he contradictory provisions of the Dodd-Frank Act are best harmonized by reading 15 U.S.C. § 78u-6(h)(1)(A)(iii)'s protection of certain whistleblower disclosures not requiring reporting to the SEC as a narrow exception to 15 U.S.C. § 78u-6(a)(6)'s definition of a whistleblower as one who reports to the SEC." Egan v. Tradingscreen, Inc., No. 10 Civ. 8202 (LBS), 2011 WL 1672066, at *5 (S.D.N.Y. May 4, 2011); see also Ellington v. Giacoumakis, No. 13-11791-RGS, 2013 WL 5631046, at *2-3 (D. Mass. Oct. 16, 2013); Murray v. UBS Sec., LLC, No. 12 Civ. 5914 (JMF), 2013 WL 2190084, at *3-7 (S.D.N.Y. May 21, 2013); Genberg v. Porter, No. 11 Civ. 2434 (WYD) (MEH), 2013 WL 1222056, at *10 (D. Colo. Mar. 25, 2013); Kramer v. Trans-lux Corp., No. 11 Civ. 1424 (SRU), 2012 WL 4444820, at *3-5 (D. Conn. Sept. 25, 2012); Nollner, 852 F. Supp. 2d at 993-95.

This is also the SEC's reading of the statute. In 2011, it promulgated a rule providing that

> (1) For purposes of the anti-retaliation protections afforded by Section 21F(h)(1) of the Exchange Act (15 U.S.C. 78u-6(h)(1)), you are a whistleblower if:
>
> (i) You possess a reasonable belief that the information you are providing relates to a possible securities law violation (or, where applicable, to a possible violation of the provisions set forth in 18 U.S.C. 1514A(a)) that has occurred, is ongoing, or is about to occur, and;
>
> (ii) You provide that information in a manner described in Section 21F(h)(1)(A) of the Exchange Act (15 U.S.C. 78u-6(h)(1)(A)).
>
> (iii) The anti-retaliation protections apply whether or not you satisfy the requirements, procedures and conditions to qualify for an award.

17 C.F.R. § 240.21F-2(b)(1). The SEC stated "[t]his change to the rule reflects the fact that the statutory anti-retaliation protections apply to three different categories of whistleblowers, and the third category includes individuals who report to persons or governmental authorities other than the [SEC]." SEC Securities Whistleblower Incentives and Protections, 76 Fed. Reg. 34300, 34304 (June 13, 2011). Two courts have found this rule deserves deference under Chevron U.S.A. Inc. v. NRDC, Inc., 467 U.S. 837 (1984). See Murray, 2013 WL 3190084, at *4-7; Kramer, 2012 WL 4444820, at *5.

However, the Fifth Circuit recently rejected this reading of the statute. Asadi v. G.E. Energy (USA), L.L.C., 720 F.3d 620 (5th Cir. 2013); see also Wagner v. Bank of Am. Corp., No. 12-cv-00381-RBJ, 2013 WL 3786643, at *4-6 (D. Colo. July 19, 2013). It found that "the definition of 'whistleblower' and the third category of protected activity do not conflict. Conflict would exist between these statutory provisions only if we read the three categories of protected activity as additional definitions of three types of whistleblowers." Asadi, 720 F.3d at 626. The court also found that "the interplay between § 78u–6(a)(6) and § 78u–6(h)(1)(A)(iii)

does not render § 78u–6(h)(1)(A)(iii) superfluous. . . . [T]his category protects whistleblowers from retaliation, based not on the individual's disclosure of information to the SEC but, instead, on that individual's other possible required or protected disclosure(s)." Asadi, 720 F.3d at 627. The court offered an example:

> Assume a mid-level manager discovers a securities law violation. On the day he makes this discovery, he immediately reports this securities law violation (1) to his company's chief executive officer ("CEO") and (2) to the SEC. Unfortunately for the mid-level manager, the CEO, who is not yet aware of the disclosure to the SEC, immediately fires the mid-level manager. The mid-level manager, clearly a "whistleblower" as defined in Dodd-Frank because he provided information to the SEC relating to a securities law violation, would be unable to prove that he was retaliated against because of the report to the SEC. Accordingly, the first and second category of protected activity would not shield this whistleblower from retaliation. The third category of protected activity, however, protects the mid-level manager. In this scenario, the internal disclosure to the CEO, a person with supervisory authority over the mid-level manager, is protected under 18 U.S.C. § 1514A, the anti-retaliation provision enacted as part of the Sarbanes-Oxley Act of 2002 ("the SOX anti-retaliation provision"). Accordingly, even though the CEO was not aware of the report to the SEC at the time he terminated the mid-level manager, the mid-level manager can state a claim under the Dodd-Frank whistleblower-protection provision because he was a "whistleblower" and suffered retaliation based on his disclosure to the CEO, which was protected under SOX.

Asadi, 720 F.3d at 627-28.

The Fifth Circuit's interpretation is appealing in that it avoids rewriting the statute. However, it rejects the SEC's interpretation of a statute it is charged with enforcing. Liu points out that this interpretation also creates a "strict liability" anti-retaliation provision whereby employers may unwittingly violate the law for actions taken against employees they do not know qualify for whistleblower protection. However, given the other deficiencies in Liu's complaint

there is no need for this Court to wade into this debate.

III. Leave to Amend

"Rule 15(a) of the Federal Rules of Civil Procedure instructs courts that leave to amend should be 'freely given.' Leave to amend need not be granted, however, where the proposed amendment would be 'futil[e].'" Advanced Magnetics, Inc. v. Bayfront Partners, Inc., 106 F.3d 11, 18 (2d Cir. 1997) (quoting Fed. R. Civ. P. 15(a)) (internal citations omitted). Because the Dodd-Frank Act's Anti-Retaliation Provision does not apply extraterritorially, any amendment by Liu would be futile.

## CONCLUSION

For the foregoing reasons, Liu's complaint is dismissed with prejudice. The Clerk of Court is directed to terminate all pending motions and mark this case closed.

Dated: October 21, 2013
      New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.

*Counsel of Record:*

David N. Mair, Esq.
Kaiser Saurborn & Mair, P.C.
111 Broadway, 18th Floor
New York, NY 10006
*Counsel for Plaintiff*

Eric C. Liebeler, Esq.
Siemens Corporation
300 New Jersey Avenue, N.W.
Washington, DC 20001

Brant W. Bishop, Esq.
Ragan Naresh, Esq.
Kirkland & Ellis LLP
655 Fifteenth Street NW, Suite 1200
Washington, DC 20005
*Counsel for Defendant*